**STATE of Missouri, Respondent,**

v.

**William Lloyd REED, Appellant.**

**No. 17069.**

Missouri Court of Appeals,
Southern District,
Division One.

June 19, 1991.

Doris Gregory Black, St. Louis, for appellant.

William L. Webster, Atty. Gen., Geoffrey W. Preckshot, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

A jury found William Lloyd Reed ("defendant") guilty of selling cocaine and assessed punishment at ten years' imprisonment. The trial court entered judgment per the verdict, ordering the sentence to run consecutively to a five-year sentence in another cocaine sale case.[1] Defendant appeals, presenting eight assignments of error.

◼ The first two challenge the sufficiency of the evidence to support the conviction. We consider them together. In doing so, we accept as true all evidence and inferences supporting the verdict and disregard contrary evidence and inferences. *State v. Evans*, 802 S.W.2d 507, 514[12] (Mo. banc 1991). We determine whether the evidence, so viewed, was sufficient to make a submissible case, *id.*, from which a reasonable juror might have found defendant guilty beyond a reasonable doubt. *State v. Dulany*, 781 S.W.2d 52, 55[3] (Mo. banc 1989).

So viewed, the evidence establishes that on April 27, 1988, Laura Marie Johnson, then age 17, and her "boy friend" met with these law enforcement officers: Clifford Hodge, a "narcotics detective" of the Poplar Bluff Police Department; Sergeant Susan Carroll of that Department; and Corporal Dennis Allen Overbey of the Missouri State Highway Patrol. Ms. Johnson agreed she would go to defendant's residence, purchase cocaine, and bring it back to the officers. For this mission, she was to be paid $30 by the officers.

Sergeant Carroll, a woman, made a "strip search" of Ms. Johnson. The latter's clothes were removed, and her body and clothes searched to confirm she was carrying no drugs. Sergeant Carroll taped a battery-operated "body transmitter" on Ms. Johnson, then Ms. Johnson redressed.

Hodge supplied Ms. Johnson three twenty-dollar bills as "buy money" for the cocaine.

Hodge drove Ms. Johnson, her boyfriend, and Overbey to defendant's neighborhood. Ms. Johnson exited the vehicle. The transmitter was turned on and she began walking toward defendant's residence. Overbey positioned himself by an "overpass that runs underneath the railroad track" near defendant's residence so he could observe Ms. Johnson. Hodge monitored a tape recorder in his vehicle by which anything received from Ms. Johnson's transmitter could be recorded.

Upon reaching defendant's residence, Ms. Johnson knocked on the door. Defendant opened it. Ms. Johnson asked whether he had the cocaine. He answered, "yes." She asked if he "had change for sixty." He replied, "yes." At some point—precisely when is unclear—she entered the house.

Ms. Johnson testified defendant went to his bathroom, brought out two small white paper packets, and handed them to her. Then, this:

"Q. Did he tell you that was cocaine?
A. Yes, he did."

She paid him and he gave her change. Asked whether there was any conversation about her returning to his house, Ms. Johnson testified:

"I asked him if I could cash a check for $40.00 could I come back and get some more and he said yes I could."

Ms. Johnson avowed no one else was in the house during the transaction.

Ms. Johnson walked back to Hodge's vehicle and handed him the two packets and the change—a five-dollar bill and five one-dollar bills. She was paid the agreed $30.

Hodge returned to his office, where he "field tested" the substance in the packets. It tested "positive to be cocaine."

The packets were taken to the Southeast Missouri Crime Laboratory in Cape Girardeau, where their contents were tested by a forensic chemist. The substance in each packet was cocaine.

At trial, Hodge produced the tape recording. He testified Ms. Johnson's transmitter was turned on "about 8:35" and the "drug transaction took place at 8:45." Ms.

1. *State v. Reed*, 789 S.W.2d 140 (Mo.App.1990).

Johnson turned the transmitter off as she returned to Hodge's car.

The tape was received in evidence and played in the presence of the jury. Ms. Johnson was called into the courtroom to listen. Afterward, she identified the voices on the tape as hers and defendant's.

■ Defendant's first point asserts the "credible evidence adduced at trial was insufficient to sustain a conviction for selling cocaine." His second point proclaims "the facts and circumstances presented by the State were inconsistent with defendant's theory of innocence."[2]

In challenging the sufficiency of the evidence, defendant asserts the portion of the tape recording during which the alleged sale occurred is unintelligible because of noise from a television playing in defendant's house. Defendant also complains that Ms. Johnson turned off the transmitter a short distance before reaching Hodge's car. Defendant emphasizes the transaction between Ms. Johnson and him was unwitnessed by either officer.

Defendant also cites the testimony of his brother, Walter. Walter testified he lived with defendant at the time of the alleged sale. Walter avowed he had seen Ms. Johnson at the house three or four times with defendant, and on those occasions there was no conversation about drugs.[3]

Defendant argues that but for Ms. Johnson's testimony, the evidence he sold her cocaine is circumstantial. Defendant contends that inasmuch as Ms. Johnson was a "paid informant" who received money only if her information produced results, she had motive and opportunity to lie.

■ Defendant's first two points are a thinly disguised invitation for us to assess Ms. Johnson's credibility. That is not our role. Ms. Johnson's credibility and the weight and value to be given her testimony were matters within the province of the jury and are not for review on appeal. *State v. Wright*, 476 S.W.2d 581, 584[4] (Mo.1972); *State v. Jenkins*, 776 S.W.2d 59, 62–63[3] (Mo.App.1989).

■ Ms. Johnson's testimony, together with the other evidence adduced by the State, was sufficient to support the verdict. Convictions for selling controlled substances have been upheld on similar evidence. *State v. Morton*, 684 S.W.2d 601, 604–05 (Mo.App.1985); *State v. Dunavant*, 674 S.W.2d 685, 686–87 (Mo.App.1984). Defendant's first two points are meritless, and border on frivolous.

Defendant's third, fourth, and seventh points complain about four members of the venire who, according to defendant, should have been stricken for cause. Defendant maintains (a) his lawyer rendered ineffective assistance in failing to challenge them for cause, and (b) the trial court committed plain error in failing to strike them for cause sua sponte. Defendant seeks plain error review inasmuch as the points were not preserved in his motion for new trial.[4]

The first problem with these points is the insufficiency of the record. At the completion of voir dire, defendant's lawyer challenged two members of the venire for cause. The trial court granted the challenges. This left 25 venire members, one more than needed.[5] The trial court, with agreement of both sides, excused the last member on the list.

2. In virtually all criminal cases we review, the State's evidence is inconsistent with the accused's theory of innocence! We assume that is why the State presents it. Defendant may have been trying to cite the rule that where a conviction rests on circumstantial evidence alone, the facts and circumstances to establish guilt must be consistent with each other, consistent with the guilt of the accused, and inconsistent with any reasonable theory of his innocence. *See: State v. Wahby*, 775 S.W.2d 147, 154–55[17] (Mo. banc 1989).

3. Walter Reed was the only defense witness. Defendant did not testify.

4. The lawyer representing defendant in this appeal is not the lawyer who represented him in the trial court. Only the first two points were preserved in the new trial motion. All others are assigned as plain error.

5. The State and defendant each had the right to six peremptory challenges. § 494.480.2(2), RSMo Cum.Supp.1989.

Defendant failed to include the jury list in the record on appeal, hence we do not know which venire member was excused. Only one of the four persons about whom defendant complains ended up on the jury. If the excused member was one of the other three, it is obvious there can be no complaint regarding him or her.

Secondly, since the advent of Rule 29.15, Missouri Rules of Criminal Procedure, effective January 1, 1988, claims of ineffective assistance of trial counsel cannot be asserted on direct appeal from a criminal conviction. *State v. Wheat*, 775 S.W.2d 155, 156–58[1] (Mo. banc 1989), *cert. denied*, — U.S. —, 110 S.Ct. 744, 107 L.Ed.2d 762 (1990). Defendant was sentenced July 10, 1990, long after the effective date of Rule 29.15. Consequently, his claims of ineffective assistance are not cognizable in this appeal.

At best, defendant is reduced to asserting the trial court committed plain error in failing to strike the four venire members sua sponte, and we are left to speculate whether the unneeded venire member whom the trial court excused was one of those about whom defendant complains.

Relief will be granted under the plain error rule only when the error so substantially affects the rights of the accused that a manifest injustice or miscarriage of justice inexorably results if left uncorrected. *State v. Sidebottom*, 753 S.W.2d 915, 919–20[3] (Mo. banc 1988), *cert. denied*, 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988).

We have carefully studied the voir dire of the four individuals about whom defendant complains and find nothing even remotely suggesting he suffered manifest injustice or miscarriage of justice because the trial court failed to strike them, or any of them, sua sponte. No jurisprudential purpose would be served by quoting the voir dire pertinent to defendant's third, fourth, and seventh points. They are summarily denied per Rule 30.25(b), Missouri Rules of Criminal Procedure (1991).

Defendant's fifth point alleges he was denied effective assistance of counsel when his lawyer failed to object to one answer by the chemist who tested the substance defendant was accused of selling. This complaint is not cognizable in this appeal. *Wheat*, 775 S.W.2d at 156–58[1].

Defendant's eighth point avers he was denied effective assistance of counsel when his lawyer failed to request a change of judge or change of venue after being specifically requested to do so. This claim, like defendant's fifth point, is ineligible for consideration in this appeal. *Wheat*, 775 S.W.2d at 156–58[1].

Defendant's sixth point, the only one not yet discussed, complains about the admission of the cocaine in evidence. Defendant asserts the "chain of custody" was not established from Hodge to the chemist. Defendant maintains (a) his lawyer rendered ineffective assistance in failing to object to the cocaine, and (b) the trial court committed plain error in receiving it in evidence.

We cannot entertain the ineffective assistance claim in this appeal. *Wheat*, 775 S.W.2d at 156–58[1].

We hold the trial court committed no error—plain or otherwise—in receiving the cocaine in evidence. Hodge testified he sealed the packets handed him by Ms. Johnson in an evidence bag. He marked the bag, then turned it over to the police department's evidence custodian. At trial, Hodge produced the evidence bag and it was marked Exhibit 1. Hodge identified two packets in the bag as those he received from Ms. Johnson.

The chemist identified Exhibit 1 as a bag containing two packets of "white powdery substance" delivered to him May 3, 1988, by Cliff Morris of the Poplar Bluff Police Department. The chemist tested the substance in both packets and determined it was cocaine.

Defendant maintains the "evidence custodian" referred to by Hodge was unnamed, and there was no evidence Hodge delivered the substance he received from Ms. Johnson to Morris. Defendant asserts the cocaine could not properly be received in evidence unless the State showed "an

unbroken chain of custody from [Ms.] Johnson to Hodge to Morris to [the chemist]."

 Defendant is wrong. *State v. Roper*, 591 S.W.2d 58 (Mo.App.1979) holds:

"The reasonable establishment of a chain of custody and the relevancy of an exhibit are matters for the trial court to decide. The State need not show who possessed the evidence at all times. The evidence is sufficient if it shows a reasonable assurance that it was the same and in the same condition." *Id.* at 61[1]. This standard does not require proof of hand-to-hand custody of the evidence, nor does the standard require the exclusion of every possibility the evidence has been disturbed. *State v. Jones*, 760 S.W.2d 536, 538[6] (Mo.App.1988).

We hold the State's evidence demonstrated reasonable assurance the substance tested by the chemist was the substance bought by Ms. Johnson from defendant, and was in the same condition when tested as when purchased. Any weakness in the proof on chain of custody went to the weight of the evidence, not its admissibility. *Roper*, 591 S.W.2d at 61.

Judgment affirmed.

MAUS, P.J., and PREWITT, J., concur.

